# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 1, 2012

## STATE OF TENNESSEE v. APRIL NICOLE CROMWELL

**Appeal from the Circuit Court for Hardin County**
**No. 9461    C. Creed McGinley, Judge**

**No. W2012-00209-CCA-R3-CD  - Filed February 4, 2013**

The Defendant, April Nicole Cromwell, pleaded guilty to theft of property valued at more than $10,000, a Class C felony. See T.C.A.§ 39-14-103 (2010).  The trial court sentenced the Defendant as a Range I, standard offender to three years with one year to serve and the remainder on probation.  On appeal, the Defendant contends that the trial court erred by (1) failing to sentence her to community corrections or probation and (2) denying her request for judicial diversion.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Joe Lee Brown, Savannah, Tennessee, for the appellant, April Nicole Cromwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and Eddie N. McDaniel, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the plea submission hearing on December 1, 2011, the Defendant stipulated to the facts contained in the indictment, which stated that

> [The Defendant] heretofore, to wit: ON OR ABOUT THE 17TH OF MARCH, 2011 . . . did intentionally or knowingly obtain or exercise control over property, to-wit: SEVERAL PIECES OF EXPENSIVE FAMILY JEWELRY of the value of MORE THAN . . . ($10,000) but less than . . . ($60,000) being the property of Riley Gunter without the owner's effective consent, with the

intent to deprive the said Riley Gunter thereof, thereby committing the offense
of THEFT OF PROPERTY, in violation of TCA §39-14-103, against the
peace and dignity of the State of Tennessee.

The Defendant received a three-year sentence pursuant to the plea agreement and applied for judicial diversion.

At the sentencing hearing, the presentence report was received as an exhibit. The report stated that the Defendant only had a previous conviction for speeding. She admitted to a seatbelt violation in Alabama three or four years previously. She graduated from Hatley High School in 2003 and attended some college classes at Jackson State Community College. The report showed the Defendant had good mental and physical health, although she suffered from periodic panic/anxiety attacks and diverticulitis. The Defendant was married with two children at the time of sentencing. The Defendant's husband received Social Security disability benefits. The Defendant received an honorable discharge from the Alabama National Guard.

The victim testified that his elderly mother and disabled brother lived with him and that he was responsible for their care. He said that his mother was ninety years old and that his brother was fifty-seven years old. He said that because his brother was blind and mentally handicapped, the State paid for the Defendant to care for his brother. He said the Defendant was employed at Deaconess Home Health. He said that at the time of the theft, the Defendant had worked in his home for about one year, that he had trusted her, and that he had treated her like family.

The victim testified that his mother was hospitalized around the time of the theft, that the paramedics who took his mother to the hospital removed her jewelry and gave it to him, and that he placed the jewelry inside his mother's jewelry box. He said that after his mother was released from the hospital and returned home, she asked for her jewelry. He said the jewelry was missing when he went to retrieve it.

The victim testified that eleven pieces of jewelry were taken and that four were recovered. He said that two 1.3-carat diamond earrings given to his mother by his deceased father were still missing and that his great grandmother's wedding ring, two gold necklaces, one sapphire pendant surrounded by diamonds, and his grandmother's broach were still missing. He said he was told by the sheriff's department that the Defendant refused to state where the missing items were. He said the Defendant was a liar. He said that the Defendant first denied taking the jewelry and that after the police recovered two items, the Defendant confessed to taking only those two items. He said it was not until the police recovered two

additional pieces that the Defendant confessed to taking those items, too. He said the Defendant did not express remorse.

The victim testified that the Defendant, who lived six houses from his home, took his mother's sense of security and that his mother now lived in fear. He wanted the court to understand the Defendant's character. He heard the Defendant state that after her father-in-law died from cancer, she would be rich. He said he provided the Defendant with daily meals while she cared for his mother and brother and fed her horses when she had no food to give them. He said his kindness was "rewarded with treachery, deceit, and theft." He said the Defendant betrayed his family's trust and her duty. He asked the court to make an example of the Defendant and to order her to serve one year in confinement and two years on probation. He did not want the Defendant to receive leniency "while profiting from stealing" from his family. He wanted the court to impose a sentence "that would remind others in a position of trust that they cannot take advantage of the elderly, weak, or infirm because they are not in a position to defend themselves."

On cross-examination, the victim testified that the Defendant lived about one-half mile from his home. He denied driving by her home yelling, "You're a b----," but admitted yelling, "thief." He denied yelling in front of the Defendant's children and said he drove by her home twice per day.

The victim testified that he changed the value of the missing jewelry based on the value of gold and that he did not know how much gold was taken during the theft. He said, though, that the items were appraised previously. A copy of the appraisal with the modified values based on the price of gold was received as an exhibit. He agreed he requested restitution in the amount of $19,525 and said the recovered items were valued at $5950. He agreed the Defendant did not admit taking the unrecovered items.

The Defendant testified that she was married and had two young children, that her husband was disabled, and that she had been a certified nurse's aide since 2006. She said she had cared for the victim's mother for about one year. She denied having any previous arrests but admitted receiving a speeding ticket. She said that she and her husband began having financial difficulty and that she took "some of this jewelry" to provide financial relief.

The Defendant testified that she took and sold the four recovered items but denied that she took the other items. She agreed she pleaded guilty to taking those items. She said she attempted to cooperate with the police investigation and the victim. She denied having a drug problem. She said she had been enrolled in a program with New Creations Outcome and Ministries. A letter signed by a program counselor was received as an exhibit stating that the Defendant was present at the Overcomers meeting on December 5, 12, 16, 19, and 27,

-3-

2011. The Overcomers meetings addressed problems with addictions, trials of life, anxiety, depression, drugs, alcohol, pornography, anger, gambling, and anything else that might impact one's life.

The Defendant testified that she had served in the National Guard and was honorably discharged. She said she had learned her lesson and expressed remorse for her actions. She said she lost both of her cars and almost lost her home because of the theft. She admitted filing for bankruptcy. She addressed the victim and his family and said she was sorry and wished she "could take it back, but we all make mistakes and we can't" take them back.

On cross-examination, the Defendant testified that her home was owned by her father-in-law and that he threatened to evict her family. She stated that she lied to the police about taking the jewelry during her first interview but that she admitted the theft when the officer told her that he would work with her if she worked with him. She agreed she did not admit the theft until the officer told her that he knew she sold some of jewelry and that the buyer paid with a check. She agreed her husband washed the check in the laundry and denied asking the buyer for another check.

The Defendant testified that the police interviewed her about two additional pieces of jewelry that were pawned and that she denied pawning those items. She agreed she told the police that she pawned jewelry at the same store and that the jewelry she pawned did not belong to the victim. She later admitted taking these two pieces of jewelry. She denied taking the jewelry the day the victim's mother was taken to the hospital.

The trial court stated that the Defendant pleaded guilty to a serious offense but that based on the principles of sentencing, the Defendant was a favorable candidate for alternative sentencing. The court found that the Defendant's honorable service in the National Guard and her lack of criminal history weighed in her favor. The court found, though, that the facts of the case were "particularly atrocious" because of the manner in which the Defendant committed the theft. The court stated that the theft was "perhaps the ultimate breach of trust" and that the Defendant was there as an "ang[el] of mercy . . . and became a messenger of destruction." The court said the Defendant's actions would only have been worse had she taken the jewelry from a dead person. The court found that the victim's mother and brother were "totally helpless."

The trial court found that the Defendant was not "a routine person" because the Defendant did not steal a loaf of bread because she was hungry. The court said "this defies description." The court found that the Defendant was "less than candid" and that she lied to the court when she said she only took four pieces of jewelry. The court stated that "in the

-4-

strongest circumstantial terms[, the Defendant was] guilty of taking everything she was accused of taking." The court ordered the Defendant to pay $13,575 in restitution.

The trial court denied full probation and judicial diversion based upon the nature of the offense and the need for deterrence. The court found that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrence to others who would likely commit "this type of horrible criminal activity." The court was not persuaded by the Defendant's participation in the Overcomers program because she began attending four days after she entered her guilty plea and knew confinement was a possible outcome and because the program was generic. The court ordered one years' confinement and two years on probation, although it believed total confinement was appropriate. The court concluded that denying full probation would prevent the Defendant's paying restitution. This appeal followed.

**I**

The Defendant contends that the trial court erred by not sentencing her pursuant to the Tennessee Community Corrections Act or placing her on full probation. She argues that the State did not present any legitimate reason for not sentencing her to community corrections or full probation. The State responds that the trial court properly sentenced the Defendant. We agree with the State.

The Tennessee Supreme Court recently adopted a new standard of review for sentencing in State v. Susan Renee Bise, 380 S.W.3d 362, 706 (Tenn. Sept. 26, 2012). In Susan Renee Bise, the court held that length of sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" Id. at 708. More recently, our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentences." State v. Christine Caudle, — S.W.3d —, —, No. M2010-01172-SC-R11-CD, slip op. at 7 (Tenn. Nov. 27, 2012).

In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

The Defendant argues that she was eligible for community corrections under Tennessee Code Annotated section 40-36-106(a)(1)(A)-(F) (2010) because she had no previous criminal history and because she received an honorable discharge from the National Guard. We note that the trial court stated that based on the principles of sentencing, the Defendant was a favorable candidate for alternative sentencing. The Defendant was eligible for probation and community corrections sentences. See T.C.A. §§ 40-35-303(a) (2010), 40-36-106(a)(1) (2010). However, mere eligibility does not automatically entitle a defendant to probation or a sentence under the Community Corrections Act. See State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991); State v. Beverly Dixon, No. W2004-00194-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App. June 30, 2005) (citing State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998)). Furthermore, the statutory provisions regarding alternative sentences must be read together with the Sentencing Act as a whole. See Fletcher, 805 S.W.2d at 787-88; State v. Wagner, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988).

When determining if incarceration is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Although the Defendant had no previous criminal history, the record reflects that she took advantage of an elderly woman and a blind, intellectually disabled man. We agree with the trial court that the facts underlying the theft were atrocious and that the Defendant breached the victim's trust. At the time of the theft, the Defendant was paid to care for the victim's disabled brother and elderly mother. Furthermore, the Defendant refused to admit stealing all the jewelry and only confessed to stealing four items after the police had direct evidence of her guilt. The court denied alternative sentencing based on the nature of the offense, to avoid depreciating the seriousness of the offense, and to provide an effective deterrence to others who would likely commit "this type of horrible criminal activity." The Defendant has not established that the trial court abused its discretion by denying community corrections and full probation. The Defendant is not entitled to relief.

## II

The Defendant contends that the trial court erred by denying judicial diversion. Although she does not provide an argument related to why she is entitled to diversion, she states she was eligible for diversion. The State responds that although the Defendant was eligible for diversion, the trial court did not abuse its discretion by denying diversion. We agree with the State.

A defendant is eligible for judicial diversion if he or she is found guilty of or pleads guilty or nolo contendere to a Class C, D, or E felony or a lesser crime, has not previously been convicted of a felony or a Class A misdemeanor, and is not seeking deferral for a sexual offense. See T.C.A. § 40-35-313(a)(1)(B)(I) (2010). The decision to grant judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Upon review, we will give the trial court the benefit of its discretion "'if any substantial evidence to support the refusal' exists in the record." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59.

As a preliminary matter, the State argues this issue is waived because the Defendant failed to make appropriate citations to the record and to the appropriate standard of review in her brief. See Tenn. R. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Although the Defendant failed to cite to the record and the appropriate standard of review, we will consider the issue on the merits. The record reflects that the trial court weighed all the appropriate factors in denying judicial diversion. Although the Defendant had no previous criminal history, had good physical and mental health, had family responsibilities, and received an honorable discharge from the National Guard, the court denied judicial diversion based upon the nature of the offense and the need for specific and general deterrence. The court found that the Defendant lied when she testified at the

sentencing hearing that she only took the four pieces of recovered jewelry.  Her lack of candor weighs against her amenability to correction.  With regard to deterrence, the court found that confinement was necessary to deter the Defendant and others from committing "this type of horrible criminal activity."

The Defendant breached the victims' trust when she stole from the people for whom she was paid to provide care.  The Defendant preyed on an elderly woman and an intellectually disabled blind man, who were helpless to defend against the Defendant's theft.  We conclude that substantial evidence exists for the trial court's denying judicial diversion.  The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.


_____
JOSEPH M. TIPTON,  PRESIDING JUDGE